## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| INNOVATION MARKETING AND | ) | |
| CONSULTING, LLC, | ) | |
| SIX DEGREES MARKETING, LLC, | ) | |
| | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO.: |
| | ) | |
| HORIZON WHOLESALE, LLC, | ) | |
| ZENERGY BRANDS, LLC, | ) | |
| DANIEL M. BOWLES, DON JESSOP | ) | |
| JOHN DOES 1-10, | ) | |
| | ) | |
|     Defendants. | ) | |

## COMPLAINT

COMES NOW, the Plaintiffs, by and through the undersigned counsel of record and for their Complaint against the Defendants, state as follows:

## I.    PARTIES

1.    Innovation Marketing and Consulting, LLC ("Innovation") is a limited liability company organized under the laws of the State of Wyoming conducting business nationwide, including within the State of Georgia.

2.    6 Degrees Marketing & Consulting, LLC ("6 Degrees") f/k/a 6 Degrees Marketing Group, LLC is limited liability company organized under the

laws of the State of Georgia conducting business nationwide, including within the State of Georgia.

3.     Defendant, Horizon Wholesale, LLC ("Horizon Wholesale") is a limited liability company organized under the laws of the State of Utah conducting business nationwide, including within the State of Georgia.

4.     Defendant, Zenergy Brands, LLC, ("Zenergy Brands") is a limited liability organized under the laws of the State of Wyoming conducting business nationwide including within the State of Georgia.

5.     Defendant Dan Bowles ("Bowles") is individual resident of the State of Arizona and is over the age of nineteen (19) years.

6.     Defendant Don Jessop ("Jessop") is an individual resident of the State of Arizona and is over the age of nineteen (19) years.

7.     Horizon Wholesale, Zenergy Brands, Bowles and Jessop are collectively referred to herein as the "Horizon Defendants."

8.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named here as Does 1-10 are unknown to Plaintiffs who therefore sue these Defendants by such fictitious names. Plaintiffs will amend this Complaint to show their true names and capacities when the same has been ascertained. Plaintiffs are informed and believe and thereupon allege that each of the Defendants designated herein as a Doe was in some manner legally

responsible for the events and occurrences herein alleged and unlawfully and proximately caused damages to Plaintiffs.

## II.   <u>JURISDICTION AND VENUE</u>

9.     This is an action for damages and relief for trademark infringement, false designation of origin, false or misleading description of fact, false or misleading representation of fact, unfair competition, false advertising, and dilution under Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125 and for violations of the laws of the State of Georgia, specifically trademark infringement, dilution, deceptive trade practices, false advertising and unfair competition under O.C.G.A. § 10-1-370, *et seq*. and O.C.G.A. § 10-1-420, *et seq*., and violations of the Georgia common law with respect to tortious interference with business relations and conversion; and finally, violations of Georgia's Racketeering Influenced and Corrupt Organizations Act, O.C.G.A. § 16-14-1, *et seq.*, through the violation of the alleged predicate acts, including:

(a)     theft by taking in violation of O.C.G.A. §§ 16-8-2 and 16-14-3(5)(A)(xii);

(b)     theft by conversion in violation of O.C.G.A. §§ 16-8-4 and 16-14-3(5)(A)(xii);

(c)     engaging in conduct defined as "racketeering activity" under 18 U.S.C. § 1961  (1)(A)(B) including:

(i)      mail fraud in violation of 18 U.S.C. § 1341; and

(ii)     wire fraud in violation of 18 U.S.C. § 1343;

(d)     conspiracy to commit all of the above offenses of state and Federal law.

10.    This Court has jurisdiction over the subject matter pursuant to the provisions of the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, jurisdiction being conferred in accordance with 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), in that this action arises under the trademark laws of the United States.

11.    Jurisdiction is also conferred on this Court pursuant to 28 U.S.C. § 1332(a)(1) through diversity of citizenship, as the action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00).

12.    Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over the Plaintiffs' claims arising from the laws of the State of Georgia as those claims are substantially related to those causes of action over which the Court has original jurisdiction.

13.    This Court may exercise personal jurisdiction over the Defendants pursuant to O.C.G.A. § 9-10-91 because one or more of the Defendants are (1) doing business in this judicial district, (2) have committed tortious acts within this judicial district and/or (3) have committed a tortious injury in this state caused by

4

an act or omission outside this state and the Defendants regularly do business in this judicial district, including unfair competition, trademark infringement, false advertising, dilution, deceptive trade practices and making deceptive, false and fraudulent statements, interference with the Plaintiffs' business and contractual relations, unauthorized use of the Plaintiffs' proprietary information and conversion, among other wrongful and unlawful acts.  This Court therefore has jurisdiction pursuant to the provisions of the Georgia long-arm statute.

14.    Venue is proper under 28 U.S.C. § 1391(b) in that one or more of the Defendants are doing and transacting business within this judicial district and have committed the tortious acts complained of herein in this judicial district of the State of Georgia.

### III.    <u>FACTUAL BACKGROUND</u>

15.    On or about August 10, 2010, John Wilhoite ("Wilhoite") formed 6 Degrees as a marketing firm in Atlanta, Georgia.

16.    On or about March 7, 2011, Wilhoite, through 6 Degrees Marketing, formed Synergy Botanicals Co., LLC ("Synergy"), a Wyoming limited liability company for the production, marketing and distribution of energy, relaxation, wellness, and male enhancement dietary supplement products developed by Wilhoite.

17.    Synergy produced, marketed and distributed dietary supplement products under the following product names: NRG Powder; Kratom XXX; RLX Relaxation Pill; Chill Pill Relaxation Pill; Add+Alert Herbal Focus Pill; Tranquili-Tea herbal wellness and relaxation tea; and Green Grass Herbal Smoking Blend. Synergy marketed and distributed these products throughout the United States continuously from 2011 through 2012.

18.    On or about April 12, 2011, 6 Degrees filed a USPTO trademark application for NRG POWDER and licensed the same to Synergy Botanicals.

19.    In addition, Synergy and/or 6 Degrees developed concepts for new dietary supplement products including the following: SuperWang male enhancement; SuperTang female enhancement; SuperBang couples enhancement; and Vyvaxx male enhancement.

20.    In June of 2011, Synergy, through Wilhoite's 6 Degrees team, developed proprietary Customer Relationship Management System ("CRM") software for sales/order processing and product fulfillment.

21.    However, on or about July 25, 2012, after building up business distribution, team and assets, Synergy became involved in litigation with Red Bull GMBH over a slogan on the NRG product that ultimately led to the failure of the business. Nonetheless, as the foregoing facts establish, Wilhoite owned and maintained the core team of people (human capital) with vast experience in the

dietary supplement industry, as well as, the trademarks and branding for the dietary supplement products continuously since at least 2011. In this regard, Wilhoite developed substantial goodwill and business reputation in the dietary supplement and alternative wellness products sold and marketed under the above referenced brand names.

21.    During the Fall of 2012, Wilhoite began exploring opportunities for finding an investor to start a new business using his team and the trademarked products. During a trip to California in January of 2013 for a wellness industry tradeshow Wilhoite met Bowles to discuss possible investment.  At the time, Bowles had no business experience in the dietary supplement industry having only been involved in the construction industry.

22.    Nevertheless, through these discussions, Bowles made clear that he wanted to be involved with the sales and marketing of the dietary supplement products owned by Wilhoite.  In this regard, Bowles represented to Wilhoite that Bowles could provide immediate placement at 2,000 locations. Bowles also represented to Wilhoite that Bowles had a team of experienced sales people ready to begin selling such products.  Therefore, Bowles proposed a 50/50 partnership with Wilhoite whereby Bowles would supply funding and distribution and Wilhoite would provide the manufacturing of the dietary supplement products and licensing of the trademarked names and branding that Wilhoite had maintained

common law rights related to since at least 2011. Importantly, however, Wilhoite did not surrender control over the products or the trademarks as part of this partnership.  Thus, based upon these representations, Wilhoite and Bowles formed Horizon Wholesale in January of 2013.

23.    Shortly thereafter, Bowles transferred 20% of his interest in Horizon Wholesale to his brother-in-law, Jessop, and instructed Jessop to file the business entity in Utah without Wilhoite's knowledge.  Like Bowles, Jessop also had no prior experience or knowledge of the dietary supplement industry and had been involved with Bowles in the construction industry.  Nonetheless, in connection with such transfer, Jessop took over the warehousing/fulfillment duties on behalf of Horizon Wholesale, while Bowles continued to provide funding and Wilhoite provided the marketing/branding of products. Bowles paid Jessop $6,000 per month through Horizon Wholesale. Bowles apologized to Wilhoite for transferring 20% of his interest to Jessop without Wilhoite's knowledge and agreed that he would discuss all Horizon Wholesale related business decisions with Wilhoite going forward.

24.    On or about February 14, 2013, Wilhoite moved his family to Arizona at Bowles' request in order to be in close proximity for regular face-to-face meetings regarding the Horizon Wholesale business.

25.    In addition, on or about February 14, 2013, Jessop, along with Wilhoite and Bowles, formed Zenergy Brands.

26.    Thereafter, on or about February 13, 2013, at the suggestion of Bowles, Wilhoite formed Innovation in Wyoming in order to hold his respective business interests in Horizon Wholesale and Zenergy Brands. In this regard, Bowles paid Innovation consulting funds to create the respective product brands to be sold by Horizon Wholesale. Additionally, Wilhoite, through Innovation, paid 6 Degrees, Wilhoite's marketing company, to conduct brand development.   As agreed between Wilhoite and Bowles, Wilhoite maintained records of all business activities conducted by Innovation and 6 Degrees, including expense reimbursements, and supplied such information to Bowles on a monthly basis.

27.    As part of the normal business operations of Horizon, Wilhoite and Bowles shared an email address (horizonwholesale@gmail.com).    Similarly, Jessop and his wives, shared an email address (horizonwholesale1@gmail.com and horizonwholesale2@gmail.com and horizonwholesale3@gmail.com).

28.    In addition, Wilhoite allowed the Horizon Defendants access to 6 Degrees' proprietary CRM, including customer lists, lead generation methods, and sales staff and experience, at no monthly service charge in order to capitalize upon Wilhoite's experience to provide workflow efficiency to the new company.

29.     Despite the business relationship between Wilhoite and Horizon Defendants, Bowles instructed Jessop to establish bank accounts solely in Jessop's name for the Horizon Defendants. Wilhoite learned of the bank account information when Jessop's wife, LeAnne aka "Annie", gave Wilhoite the login and password information for the bank accounts.

30.     In an effort to promote the effectiveness and efficiency of Horizon Wholesale, Wilhoite allowed his wife, Amy, to provide guidance and support to Jessop and his wife, Annie, in connection with the operation of the CRM and Quickbooks in order to effectively maintain records.

31.     Wilhoite also brought his herbal cigarette proprietary formulation and manufacturing partners to the table to assist in Horizon Wholesale sales efforts. However, despite his representations regarding an existing, experienced salesforce, Bowles began to put together a team of sales people who had no experience in sales.  Furthermore, contrary to his previous representations to Wilhoite, Bowles only provided approximately 20 customer names and leads and only marginal placement and sales of products, even though he had guaranteed thousands of placements to Wilhoite.

32.     Wilhoite instructed Jessop to speak with Wilhoite's trademark attorney in order to take necessary steps protect the brand names licensed by Wilhoite to the Horizon Defendants for the dietary supplement products by seeking

10

trademark registration through the USPTO.  Wilhoite also instructed Jessop to sign the necessary licensing agreement for Horizon Wholesale and Zenergy Brands to use the trademarked names and branding on the dietary supplement products licensed by Wilhoite through 6 Degrees with his permission.  However, Wilhoite would later discover that Jessop failed to obtain the trademarks and further failed to return licensing agreement.

33.    As a result of Jessop's failures, Wilhoite proceeded to file United States Patent and Trademark Office ("USPTO") applications for ZeNRG, Zenergy, Superwang, Superbang, Supertang, Vyvaxx, (collectively referred to herein as the "Wilhoite Trademarks") through Innovation.  Specifically, on June 17, 2013, USPO trademark applications were submitted by Innovation for ZeNRG (Serial Number 85962091) and SUPERWANG (Serial Number 85962120).  Similarly, on July 2, 2013, Innovation submitted USPTO trademark applications for SUPERBANG (Serial Number 860011750), SUPERTANG (Serial Number 86001193) and VYVAXX (Serial Number 86001123).  Finally, on July 21, 2013, Innovation submitted a USPTO trademark application for ZENERGY (Serial Number 86015779).  As explained above, Wilhoite (through Synergy and 6 Degrees) had maintained the common law rights associated with the Wilhoite Trademarks since at least as early as 2011 even though the trademark applications for the Wilhoite Trademarks were not filed until June / July of 2013.

34.     On July 29, 2014, the USPTO issued Registration Number 4574618 for the SUPERWANG trademark.

35.     Between February and November of 2013, Wilhoite (through 6 Degrees and Innovation) procured, developed and created the dietary supplement products under the Wilhoite Trademarks using his preexisting relationships with various manufacturers and vendors.  In connection therewith, Horizon Wholesale paid Wilhoite as agreed.  Furthermore, Horizon Wholesale and Zenergy Brands held Wilhoite out and treated him as an owner.

36.     On or about September 18, 2013, Bowles informed Wilhoite that he wanted an "exit strategy" due to the low volume of sales and his inability to continue to provide funding to Horizon Wholesale.  *See* text message dated September 18, 2013 attached hereto as Exhibit 1. In the same message, Bowles admitted that the rights to the dietary supplement products, including the Wilhoite Trademarks and the branding, belonged to Wilhoite.  *Id.*

37.     Wilhoite explained to Bowles that if he wanted out, they would need to come to an agreement for Bowles to be bought out of the business by Wilhoite. In this regard, Wilhoite explained that was his "baby" and that he would continue to grow the business and develop the product brand under the Wilhoite Trademarks.  Specifically, Wilhoite told Bowles that the sales were far below what Bowles had originally promised to Wilhoite.  Further, Wilhoite explained that

Jessop did not understand this business and could not fulfill the orders as his role required.

38.     As a result of this conversation, Wilhoite renegotiated his interests to 60% ownership and gave up his interest in an unrelated herbal cigarette business to Bowles. Furthermore, Wilhoite agreed he would take a more active role in the day-to-day management of sales and fulfillment of product orders.  As a result, October sales increased to over $80,000 per month setting a new monthly sales record. This increase in sales reinvigorated Bowles interest in Horizon Wholesale and the sales of the dietary supplement products under the Wilhoite Trademarks.

39.     Thereafter, however, on or about November 16, 2013, Wilhoite and Jessop had engaged in an argument regarding Jessop's continued failure in his duties with the company which resulted in Bowles telling Wilhoite to not talk to Jessop anymore.  More importantly, Bowles informed Wilhoite that he did not want to continue being in business with Wilhoite.  Therefore, Bowles insisted that because he had put up all the funding, the businesses, Horizon Wholesale and Zenergy Brands, along with the Wilhoite Trademarks and branding, the CRM, the proprietary information, including the trade secrets, suppliers, customer database and comprehensive lead lists, and the associated goodwill all belonged to Bowles and the Horizon Defendants.

40.     As a result of this argument, on December 21, 2013, Wilhoite sent a cease and desist letter to the Horizon Wholesale team, including Bowles and Jessop.   Specifically, Wilhoite told the email recipients that "Horizon will no longer be allowed to legally sell anything that bears the trademarks that I own after the end of the year."  *See* email dated December 21, 2013 attached hereto as Exhibit 2.  In addition, Wilhoite informed Horizon that all agreements, including any licensing agreements, between Horizon Wholesale and Innovation, were thereby terminated.  In this regard, Wilhoite also terminated service to the CRM software that had been provided by Wilhoite without charge to Horizon Wholesale and Zenergy Brands.

41.     Based upon Bowles previous admission that the Wilhoite Trademarks belonged to Wilhoite, the cease and desist sent by Wilhoite should have been sufficient to prevent further use by the Horizon Defendants.  Nevertheless, despite such notice, the Horizon Defendants have continued to use and profit from the Wilhoite Trademarks and have deprived Wilhoite of his ownership interests in Horizon Wholesale and Zenergy Brands.  In this regard, in December of 2013, Horizon Wholesale served Wilhoite, Innovation and 6 Degrees with an Ex Parte TRO motion in Utah claiming that Wilhoite did not have any ownership in the either the companies or the trademarked products. As a result of false testimony, the Court ordered Wilhoite (who was a pro se Defendant) to provide the

proprietary CRM information to the Horizon Defendants here for them to use against Wilhoite, Innovation and 6 Degrees.

42.   Now, as the Horizon Defendants are in possession of the CRM, including Wilhoite's trade secrets, suppliers, customer database and comprehensive lead list, the Defendants have contacted, sold to and profited from Wilhoite's customers and leads, suppliers, vendors and manufacturers by continued marketing of the dietary supplement products using the Wilhoite Trademarks and used the access to hire an outside firm to copy the proprietary software.  Moreover, Horizon Wholesale representatives have begun to contact, harass and threaten Wilhoite's contract product manufacturer demanding that the manufacturer give to them formulas for the dietary supplement products marketed under the Wilhoite Trademarks that are rightfully owned and used by Wilhoite, 6 Degrees, Synergy and Innovation since at least 2011.

43.   In addition, despite their own admission that the Wilhoite Trademarks and branding rights to the dietary supplement products were owned by Wilhoite, Horizon Wholesale has submitted false statements to the USPTO in submitting at least one trademark application for Innovation's ZeNRG brand.   Ultimately, however, the USPTO denied registration to Horizon Wholesale.

44.   Based upon the foregoing facts, the Horizon Defendants, conspired to steal Wilhoite's proprietary information, including the CRM, his sales experience

and knowledge, staff, customer lists and leads, as well as, the Wilhoite Trademarks for use in connection with the dietary supplement products. Due to the Horizon Defendants' lack of knowledge of the dietary supplement industry, they could not have set up a profitable business without Wilhoite's proprietary information, the Wilhoite Trademarks and Innovations trademarked brands.

45.    The foregoing unlawful conduct by the Horizon Defendants entitles the Plaintiffs to both injunctive and monetary relief as explained herein.

## IV.   CLAIMS

46.    Plaintiffs hereby incorporate and reallege paragraphs one (1) through forty-five (45) as if fully set forth herein.

47.    The Horizon Defendants, individually and/or collectively, and as a part of a conspiracy, deliberately, willfully and unlawfully, stole the Plaintiffs' intellectual property, including the Wilhoite Trademarks and branding, as well as, the Plaintiffs' proprietary information, including the CRM and Wilhoite's trade secrets, suppliers, customer database and comprehensive lead list, in violation of O.C.G.A. §§16-14-4(a – c).

48.    The Horizon Defendants, working individually and/or collectively as part of a conspiracy as set forth above and at all times relevant hereto with the willful and deliberate intent to trade and capitalize on the goodwill and business

reputation of the Plaintiffs and symbolized by the Wilhoite Trademarks in violation of 15 U.S.C. §§ 1114 and 1125.

49.    The Horizon Defendants, working individually and/or collectively as part of a conspiracy as set forth above and at all times relevant hereto have used the Wilhoite Trademarks and traded in dietary supplement products bearing such trademarks without the knowledge, authorization and consent of the Plaintiffs in violation of 15 U.S.C. §§ 1114 and 1125.

50.    The Horizon Defendants, working individually and/or collectively as part of a conspiracy as set forth above and at all times relevant hereto, have marketed and targeted for sale of dietary supplement products under the Wilhoite Trademarks to the customers, suppliers and vendors cultivated by the Plaintiffs through their vast years of experience in the dietary supplement industry in violation of 15 U.S.C. §§ 1114 and 1125.

51.    The Horizon Defendants, working individually and/or collectively as part of a conspiracy as set forth above and at all times relevant hereto, have developed, advertised, promoted and distributed information to the Plaintiffs' customers, suppliers and vendors that falsely represented to such persons that the Horizon Defendants were the rightful owners of Horizon Wholesale and Zenergy Brands and further that the Horizon Defendants were the rightful owners of the

Wilhoite Trademarks and the dietary supplement products sold thereunder, all in violation of 15 U.S.C. §§ 1114 and 1125 and 18 U.S.C. §§ 1341 and 1343.

52.    By engaging in these unlawful activities using the Plaintiffs' proprietary information and the Wilhoite Trademarks, the Horizon Defendants, working individually and/or collectively as part of a conspiracy as set forth above and at all times relevant hereto, have falsely indicated to the consuming public that the dietary supplement products marketed by the Horizon Defendants under the Wilhoite Trademarks were either connected with, sponsored by, affiliated with, and/or approved by the Plaintiffs or that the Horizon Defendants were the rightful owners of such Wilhoite Trademarks.

53.    The actions taken by the Horizon Defendants as described herein were conducted with the knowledge that they did not own the Wilhoite Trademarks or any of the rights to the dietary supplement products marketed thereunder, as well as, the Plaintiffs' proprietary rights in the CRM information, with the specific intent to capitalize upon such proprietary information and to sell dietary supplement products under the Wilhoite Trademarks without authorization, permission, or consent, in an effort to cause mistake and confusion among the consuming public as to a false sponsorship, association and/or affiliation of the Horizon Defendants to the Plaintiffs in violation of 15 U.S.C. § 1125.

18

54.    The Horizon Defendants, working individually and/or collectively as part of a conspiracy as set forth above and at all times relevant hereto, have infringed upon and diluted the trademark rights of the Plaintiffs and misrepresented to the consuming public that the Horizon Defendants are authorized to promote and distribute dietary supplement products under the Wilhoite Trademarks, in violation of 15 U.S.C. §§ 1114 and 1125.  Such misrepresentations were false and misleading.

55.    The Horizon Defendants, working individually and/or collectively as part of a conspiracy as set forth above and at all times relevant hereto, undertook the above referenced conduct with the specific and willful intent to confuse the consuming public and falsely represent the true facts thereto regarding the ownership of Horizon Wholesale and Zenergy Brands, as well as, the dietary supplement products marketed under the Wilhoite Trademarks, in order to unfairly compete with the Plaintiffs in violation of 15 U.S.C. §§ 1114 and 1125.

56.    As a result of the Horizon Defendants' conduct as described herein, the Plaintiffs, individually and collectively, have suffered substantial monetary harm in terms of lost sales and opportunities related to the sale of dietary supplement products under the Wilhoite Trademarks, as well as, lost monetary investment into Horizon Wholesale and Zenergy Brands.

57.     Additionally, the Plaintiffs, individually and collectively, have suffered irreparable harm by virtue of the Horizon Defendants wrongfully acquiring and using the Plaintiffs' CRM, proprietary information, including the CRM, sales experience and knowledge, staff, customer lists and leads, as well as, the Wilhoite Trademarks for use in connection with the dietary supplement products, all without the authorization or permission of the Plaintiffs.

58.     The intent of the Horizon Defendants, working individually and/or collectively as part of a conspiracy, in taking the actions described herein and using the Plaintiffs' proprietary information and the Wilhoite Trademarks, was and is in an effort to trade off of the Plaintiffs' goodwill and business reputation in violation of 15 U.S.C. §§ 1114 and 1125.

59.     The Horizon Defendants, working individually and/or collectively as part of a conspiracy, by carrying out the unlawful activities described herein, have falsely designated to the consuming public that dietary supplement products sold by the Horizon Defendants under the Wilhoite Trademarks are either connected with, sponsored by, affiliated with or approved by the Plaintiffs or that the Horizon Defendants own the rights to the Wilhoite Trademarks outright.  Such conduct falsely represents the dietary supplement products bearing the Wilhoite Trademarks and unfairly competes with the Plaintiffs in violation of 15 U.S.C. 1114 and 1125.

60.     The Horizon Defendants, working individually and/or collectively as part of a conspiracy, have competed unfairly with the Plaintiffs by wrongfully acquiring and using the Plaintiffs proprietary information, including the CRM, sales experience and knowledge, staff, customer lists and leads, as well as, the Wilhoite Trademarks for use in connection with the dietary supplement products, in tortious interference with the Plaintiffs' business.

61.     The Horizon Defendants, working individually and/or collectively as part of a conspiracy, have competed unfairly with the Plaintiffs by wrongfully acquiring and using the Plaintiffs' CRM, proprietary information, including the CRM, sales experience and knowledge, staff, customer lists and leads, as well as, the Wilhoite Trademarks for use in connection with the dietary supplement products, and in so doing have stolen and converted the Plaintiffs' respective property to their own in deprivation of the Plaintiffs' respective rights.

62.     The aforementioned unlawful actions were taken by the Horizon Defendants through the creation and use of various and multiple business entities, which formed through the Horizon Defendants' conduct a common enterprise and enabled the Horizon Defendants to commit several crimes in violation of O.C.G.A. § 16-14-4.  The business entities named herein are those which the Plaintiffs have reason to believe were utilized in the unlawful activities alleged herein.  The Plaintiffs also have reason to believe that the Horizon Defendants owned,

controlled or utilized various other business entities in the unlawful activities alleged herein, but the identities of such business entities are currently unknown.

63.     The Horizon Defendants used these business entities as commercial vehicles to engage in the aforementioned unlawful conduct and commit various crimes including, but not limited to, the crimes alleged herein.

> **A.     COUNT ONE: Federal Trademark Infringement under Section 32 of the Lanham Act (15 U.S.C. § 1114) Against All Defendants.**

64.     The Plaintiffs hereby incorporate and reallege paragraphs one (1) through sixty-three (63) as if fully set forth herein.

65.     As a result of the acts complained of herein and as further alleged in paragraphs 46 to 63, the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, use of the Wilhoite Trademarks, has already and is likely to cause confusion, mistake and deception among purchasers of the dietary supplement products sold thereunder in violation of 15 U.S.C. § 1114.

66.     Such purchasers have been and will likely be misled into believing that the Horizon Defendants are associated with, connected to, affiliated with, approved by or otherwise sponsored or authorized by the Plaintiffs to market and sell dietary supplement products under the Wilhoite Trademarks or that the Horizon Defendants are the outright owners of the Wilhoite Trademarks in violation of 15 U.S.C. § 1114.

67.    The conduct of the Horizon Defendants, working individually and/or collectively as part of a conspiracy, has caused and will continue to cause irreparable injury and monetary damages to the Plaintiffs unless and until they are restrained by this Court.  The Plaintiffs have no adequate remedy at law for the non-monetary damages caused by the Horizon Defendants.

68.    The Horizon Defendants' conduct, jointly and severally, has resulted in direct and proximate injury to the Plaintiffs.

       **B.**    **COUNT TWO: Federal Trademark Infringement, False Designation of Origin, False or Misleading Representation of Fact, Unfair Competition and False Advertising Under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) Against All Defendants.**

69.    The Plaintiffs hereby incorporate and reallege paragraphs one (1) through sixty-eight (68) as if fully set forth herein.

70.    As alleged herein and specifically, in paragraphs 46 to 63, the conduct of the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, infringes upon the Plaintiffs' trademark rights, uses one or more false designations of origin, falsely or misleadingly represents and describes facts, falsely advertises that the Horizon Defendants are associated with, connected to, affiliated with, approved by or otherwise sponsored or authorized by the Plaintiffs to market and sell dietary supplement products under the Wilhoite Trademarks or that the Horizon Defendants are the outright owners of the Wilhoite Trademarks.

23

71.     Through such misrepresentations, the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, have caused and will continue to cause dietary supplements to enter into interstate commerce through false advertising in violation of 15 U.S.C. § 1125(a).

72.     Moreover, the Horizon Defendants' appropriation and use of the Wilhoite Trademarks have caused confusion, mistake or deception with the Plaintiffs' trademark rights in that the consuming public will acquire an incorrect impression that the goods sold by the Horizon Defendants under the Wilhoite Trademarks are connected with, affiliated with, sponsored, controlled, produced, licensed or otherwise authorized by the Plaintiffs or that the Horizon Defendants are the outright owners of the Wilhoite Trademarks, thereby gaining acceptance and profit by reason of the reputation and goodwill associated with the Wilhoite Trademarks causing the Plaintiffs irreparable harm and monetary damages.

73.     The aforesaid false and misleading advertising and misrepresentations by the Horizon Defendants, working individually and/or collectively as part of a conspiracy, has caused the Plaintiffs irreparable harm for which they have no adequate remedy at law.

74.     Unless and until the unlawful conduct of the Horizon Defendants, working individually and/or collectively as part of a conspiracy, is restrained an enjoined by this Court, the Plaintiffs will continue to suffer irreparable harm and

the consuming public will continue to suffer under a likelihood of confusion affecting the Plaintiffs.

75.     Unless restrained by this Court, the unlawful misrepresentations, false designations and false advertisements of the Horizon Defendants, working individually and/or collectively as part of a conspiracy, will be continuous, increasingly publicized and brought to the attention of the consuming public worldwide.  Furthermore, upon information and belief, the Horizon Defendants will continue to carry on their wrongful conduct as alleged herein and continue to do so unless enjoined by this Court.

76.     The Horizon Defendants' conduct, jointly and severally, has resulted in direct and proximate damage to the Plaintiffs.

> **C.      COUNT THREE: Federal Trademark Dilution Under Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c) Against All Defendants.**

77.     The Plaintiffs hereby incorporate and reallege paragraphs one (1) through seventy-six (76) as if fully set forth herein.

78.     Since at least as early as 2011, Wilhoite, through his companies, including Synergy Botanicals, Innovation and 6 Degrees, have made tremendous sales of dietary supplement products using the Wilhoite Trademarks and have conducted considerable promotion and advertising of such goods using the Wilhoite Trademarks through extensive and exclusive use thereof.  These efforts

have caused the Wilhoite Trademarks to become famous throughout the United States.

79.     As alleged herein and specifically, in paragraphs 46 to 63, the conduct of the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, in using the Wilhoite Trademarks, without the Plaintiffs' authorization, permission or consent, in connection with the Horizon Defendants' advertising and conduct described herein, causes dilution to the distinctiveness of the Wilhoite Trademarks in violation of 15 U.S.C. § 1125(c).

80.     The aforesaid conduct of the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, is made and maintained with the deliberate and willful intent to trade off the Plaintiffs' goodwill and reputation built into the Wilhoite Trademarks and to cause dilution of such trademarks in violation of 15 U.S.C. § 1125(c).

81.     The aforesaid conduct of the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, constitutes violations of 15 U.S.C. § 1125(c), including dilution of the Wilhoite Trademarks.

82.     The unlawful and willful conduct of the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, is causing the Plaintiffs irreparable harm and monetary damages. The Plaintiffs have no adequate remedy at law for their non-monetary damages.

83.   The Horizon Defendants' conduct, jointly and severally, has resulted in direct and proximate damage to the Plaintiffs.

**D.   COUNT FOUR: Violation of Georgia's Racketeer Influenced and Corrupt Organizations Act (RICO), O.C.G.A. § 16-14-1, *et seq*. Against All Defendants.**

84.   The Plaintiffs hereby incorporate and reallege paragraphs one (1) through eighty-three (83) as if fully set forth herein.

85.   As alleged herein and specifically, in paragraphs 46 to 63, the conduct of the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, is in violation of O.C.G.A. § 16-14-4(a) in that the Horizon Defendants, jointly and severally, directly or indirectly, have created, acquired and/or maintained an interest or control in one or more enterprises, including, but not limited to, Horizon Wholesale and Zenergy Brands, and an interest in property and money through a pattern of racketeering activity.

86.   As alleged herein and specifically, in paragraphs 46 to 63, the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, and in violation of O.C.G.A. § 16-14-4(b), jointly and severally, directly or indirectly, have been employed by, associated with, conducted or participated in the affairs of one or more enterprises, including the named Defendants and the aforementioned entities, which affect interstate commerce through a pattern of racketeering activity.

87.    As alleged herein and specifically, in paragraphs 46 to 63 and in violation of O.C.G.A. § 16-14-4(c), the Horizon Defendants have conspired and/or endeavored to violate the provisions of O.C.G.A. § 16-14-4(a) and (b).

88.    The Horizon Defendants have engaged in and conspired to engage in interrelated criminal activities, which constitute predicate criminal actions under O.C.G.A. § 16-14-1, *et seq.*, and which include, but are not limited to the following:

(a)    theft by taking in violation of O.C.G.A. §§ 16-8-2 and 16-14-3(5)(A)(xii);

(b)    theft by conversion in violation of O.C.G.A. §§ 16-8-4 and 16-14-3(5)(A)(xii);

(c)    engaging in conduct defined as "racketeering activity" under 18 U.S.C. § 1961 (1)(A)(B) including:

(i)    mail fraud in violation of 18 U.S.C. § 1341; and

(ii)    wire fraud in violation of 18 U.S.C. § 1343;

(d)    conspiracy to commit all of the above offenses of state and Federal law.

89.    The Horizon Defendants knowingly, individually and jointly, devised and participated in a scheme to defraud the Plaintiffs and their customers by stealing or converting Wilhoite's proprietary information, including the CRM, his

sales experience and knowledge, staff, customer lists and leads, as well as, the Wilhoite Trademarks for use in connection with the dietary supplement products, and misrepresented to the Plaintiffs' customers, suppliers and vendors that the goods sold by the Horizon Defendants are connected with, affiliated with, sponsored, controlled, produced, licensed or otherwise authorized by the Plaintiffs or that the Horizon Defendants are the outright owners of the Wilhoite Trademarks, and did so willingly with the intent to defraud and used the U.S. Mails and the interstate and electronic wires for the purpose of executing their scheme. The customers of the Plaintiffs and the consuming public in general have relied upon the Horizon Defendants' representations to their respective detriment.

90.    The Horizon Defendants were aware of the Plaintiffs' ownership of the Wilhoite Trademarks and Wilhoite's proprietary information and lacked any knowledge of the dietary supplement industry prior to their involvement with the Plaintiffs.

91.    The Horizon Defendants communicated and conspired to communicate via U.S. Mail and interstate telephone and electronic transmission in furtherance of their conspiracy and plan to wrongfully acquire, steal, promote and distribute dietary supplements under the Wilhoite Trademarks and to use Wilhoite's proprietary information, including the CRM, his sales experience and knowledge, staff, customer lists and leads, in furtherance of a scheme or artifice to

defraud by providing, selling and marketing dietary supplement products under the Wilhoite Trademarks without authorization, permission or consent of the Plaintiffs.

92. The Horizon Defendants communicated and conspired to communicate via U.S. Mail, interstate and electronic transmission using misleading and deceptive marketing communications to customers, suppliers, and vendors which they knew or should have known to be false and in furtherance of a scheme or artifice to defraud by providing, selling and marketing dietary supplement products under the Wilhoite Trademarks, without the authorization, permission or consent of the Plaintiffs.

93. The Horizon Defendants willfully and wrongfully engaged in the theft of Wilhoite's proprietary information, including the CRM, his sales experience and knowledge, staff, customer lists and leads, as well as, the Wilhoite Trademarks for use in connection with the dietary supplement products, in furtherance of a scheme or artifice to defraud by providing, selling and marketing dietary supplement products under the Wilhoite Trademarks, without the authorization, permission or consent of the Plaintiffs.

94. The Horizon Defendants have engaged in a pattern of the aforementioned criminal activities. The aforementioned activities of the Horizon Defendants have the same or similar purposes, results, participants, victims and methods of commission.

95.     The aforementioned acts of the Horizon Defendants have caused and/or proximately caused damages to the Plaintiffs.

      **E.**    **COUNT FIVE: Georgia Statutory and Common Law Trademark Infringement, Unfair Competition, Trademark Dilution, False Advertising and Deceptive Trade Practices Against All Defendants.**

96.     The Plaintiffs hereby incorporate and reallege paragraphs one (1) through ninety-five (95) as if fully set forth herein.

97.     As alleged herein and specifically, in paragraphs 46 to 63, the conduct of the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, constitute trademark infringement, unfair competition, trademark dilution, false advertising and deceptive trade practices in violation of the laws of the State of Georgia, including O.C.G.A. §§ 10-1-451, *et seq*. and 10-1-370, *et seq*. and the common law.

98.     The actions of the Horizon Defendants have caused and will continue to cause irreparable injury and monetary damages to the Plaintiffs unless restrained by this Court.

99.     The Horizon Defendants' conduct, jointly and severally, has resulted in direct and proximate damage to the Plaintiffs.

      **F.**    **COUNT SIX: Tortious Interference with Business Relations Against All Defendants.**

100.   The Plaintiffs hereby incorporate and reallege paragraphs one (1) through ninety-nine (99) as if fully set forth herein.

101.   As alleged herein and specifically, in paragraphs 46 to 63, the conduct of the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, has and continues to intentionally interfere with the Plaintiffs' business relations with their customers, suppliers, vendors and manufacturers by inducing and attempting to induce such persons to purchase goods sold by the Horizon Defendants under the Wilhoite Trademarks as being connected with, affiliated with, sponsored, controlled, produced, licensed or otherwise authorized by the Plaintiffs or that the Horizon Defendants are the outright owners of the Wilhoite Trademarks.   In this regard, the Horizon Defendants have further intentionally interfered with the Plaintiffs' business relations by wrongfully contacting the Plaintiffs' contract manufacturer demanding that such entity deliver to the Horizon Defendants the Plaintiff's formula.

102.   The wrongful conduct of the Horizon Defendants, as alleged herein, has and is proximately causing the Plaintiffs to suffer harm to their respective business reputations, loss of business, and loss of profits.

103.   The actions of the Horizon Defendants have been and continue to be taken without the authorization, permission or consent of the Plaintiffs and in

direct violation of the previously provided notice to the Horizon Defendants to cease and desist from such conduct.

104.   The Horizon Defendants, working individually and/or collectively as a part of a conspiracy, have caused and will continue to cause irreparable injury and monetary damages to the Plaintiffs unless restrained by this Court.   The Plaintiffs have no adequate remedy at law for the non-monetary damages.

105.   The Horizon Defendants' conduct, jointly and severally, has resulted in direct and proximate damage to the Plaintiffs.

### G.   COUNT SEVEN: Conversion of the Plaintiffs' Property Against All Defendants.

106.   The Plaintiffs hereby incorporate and reallege paragraphs one (1) through one hundred five (105) as if fully set forth herein.

107.   As alleged herein and specifically, in paragraphs 46 to 63, the conduct of the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, constitutes an unlawful taking and theft of the Plaintiffs' property, including Wilhoite's proprietary information, including the CRM, his sales experience and knowledge, staff, customer lists and leads, as well as, the Wilhoite Trademarks for use in connection with dietary supplement products.

108.   In committing such wrongful taking and theft of the Plaintiffs' property, the Horizon Defendants have converted and stolen said property described above for their own use and benefit and to the detriment of the Plaintiffs.

109.   The Horizon Defendants, working individually and/or collectively as a part of a conspiracy, have caused and will continue to cause irreparable injury and monetary damages to the Plaintiffs unless restrained by this Court.   The Plaintiffs have no adequate remedy at law for the non-monetary damages.

110.   The Horizon Defendants' conduct, jointly and severally, has resulted in direct and proximate damage to the Plaintiffs.

## V.    RELIEF REQUESTED

WHEREFORE, the Plaintiffs demand the following:

1.    That the Court adjudge and decree that the Plaintiffs are the exclusive owners the Wilhoite Trademarks for use in connection with dietary supplement products.

2.    That the Court adjudge and decree that the conduct of the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, infringes upon the Plaintiffs' respective trademark rights in violation of 15 U.S.C. § 1114.

3.    That the Court adjudge and decree that the conduct of the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, infringes upon the Plaintiffs' respective trademark rights in violation of 15 U.S.C. § 1125.

4.      That the Court adjudge and decree that the conduct of the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, serves to designate falsely the origin of the dietary supplement products offered for sale and marketed by the Horizon Defendants and to describe and falsely represent that the goods marketed and sold by the Horizon Defendants are connected with, affiliated with, sponsored, controlled, produced, licensed or otherwise authorized by the Plaintiffs or that the Horizon Defendants are the outright owners of the Wilhoite Trademarks.

5.      That the Court adjudge and decree that the conduct of the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, constitutes dilution of the Plaintiffs' famous Wilhoite Trademarks in violation of 15 U.S.C. § 1125(c).

6.      That the Court adjudge and decree that the conduct of the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, constitutes violations of O.C.G.A. § 10-1-451, *et seq*. and 10-1-370, *et seq*.

7.      That the Court adjudge and decree that the conduct of the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, infringes upon the Plaintiffs' rights under the common law.

8.      That the Court adjudge and decree that the conduct of the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, constitutes unfair competition under the common law.

9.      That the Court adjudge and decree that the conduct of the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, constitutes intentional interference with the Plaintiffs' business relations under the common law.

10.     That the Court adjudge and decree that the conduct of the Horizon Defendants, working individually and/or collectively as a part of a conspiracy, constitutes theft and conversion of the Plaintiffs' property under the common law.

11.     That the Court enter temporary and permanent injunctions against the Horizon Defendants and any of their officers, agents, servants, employees and attorneys, and any of those persons in active concert or participation with the Horizon Defendants, from directly or indirectly:

(a)     Selling, offering for sale, distributing or otherwise disposing of any dietary supplement products under the Wilhoite Trademarks;

(b)     Marketing, advertising or promoting any dietary supplement products under the Wilhoite Trademarks;

36

(c)     Using any word(s) or mark(s) confusingly similar to the Wilhoite Trademarks in connection with the marketing, sale and distribution of dietary supplement products;

(d)     Representing by any words or conduct that goods marketed, sold or distributed by the Horizon Defendants are connected with, affiliated with, sponsored, controlled, produced, licensed or otherwise authorized by the Plaintiffs or that the Horizon Defendants are the outright owners of the Wilhoite Trademarks;

(e)     Committing any act which, in and of itself, or from the manner or under the circumstances in which it is done, amounts to a false designation of origin, false description or false representation of the Horizon Defendants.

(f)     Using, copying, distributing, selling or otherwise disposing of Wilhoite's proprietary information including the CRM, his sales experience and knowledge, staff, customer lists and leads, as well as, the Wilhoite Trademarks for use in connection with dietary supplement products.

12.     That the Court enter an injunction directing the Horizon Defendants:

(a)     To immediately return under oath any and all of Wilhoite's proprietary information including the CRM, his sales experience and

knowledge, staff, customer lists and leads, as well as, any item bearing the Wilhoite Trademarks;

(b)     To remove and/or have removed from any and all third-parties, websites, advertising and marketing materials, any false advertisements for sale and false representations that the goods marketed and sold by the Horizon Defendants are connected with, affiliated with, sponsored, controlled, produced, licensed or otherwise authorized by the Plaintiffs or that the Horizon Defendants are the outright owners of the Wilhoite Trademarks;

(c)     To cancel all orders for the purchase of dietary supplements from the Horizon Defendants bearing the Wilhoite Trademarks;

(d)     To produce and provide to the Plaintiffs a written report of all purchasers, customers, vendors, suppliers and manufacturers which the Horizon Defendants have contacted, attempted to contact, sold to, marketed to and/or promoted to, any dietary supplement products under the Wilhoite Trademarks;

(e)     To produce and provide to the Plaintiffs a written report of all persons, purchasers, customers, vendors, suppliers and manufacturers that the Horizon Defendants learned of through the unlawful use of Wilhoite's proprietary information, including the CRM;

(f)     To preserve any and all records, whether in written or electronic form, that in any way relate to the use of the Wilhoite Trademarks and the matters referred to herein; and

(g)     To file with the Court and to provide a copy to the below counsel of record, within thirty (30) days of the service of such injunction upon the Horizon Defendants, a written report detailing under oath the manner in which the Horizon Defendants have complied with the injunction.

13.     That the Court enter judgment against the Horizon Defendants, jointly and severally, and award the Plaintiffs damages arising out of the Horizon Defendants' violations of the Lanham Act and Georgia statutory and common law.

14.     That the Court enter judgment against the Horizon Defendants, jointly and severally, and award the Plaintiffs damages arising out of the Horizon Defendants' intentional interference with the Plaintiffs' business relations.

15.     That the Court enter judgment against the Horizon Defendants, jointly and severally, and award the Plaintiffs damages arising out of the Horizon Defendants' violations of the Georgia Racketeering Influenced and Corrupt Organizations Act, O.C.G.A. § 16-14-1, *et seq*.

16.     That the Court enter judgment against the Horizon Defendants, jointly and severally, and award the Plaintiffs damages arising out of the Horizon Defendants' wrongful theft and conversion of the Plaintiffs' property.

17.    That the Court award the Plaintiffs punitive damages against the Horizon Defendants, jointly and severally.

18.    That the Court award the Plaintiffs treble damages against the Horizon Defendants, jointly and severally.

19.    That the Court award the Plaintiffs their full costs for this action.

20.    That the Court award the Plaintiffs reasonable attorney's fees.

21.    That the Court require a full and complete accounting of all monies received by the Horizon Defendants as a result of the wrongful actions stated herein including monies obtained through other entities utilizing 6 Degrees' intellectual property and/or products and/or entities controlled by Defendants and/or their affiliates or assignees.

22.    That the Court award interest at the then prevailing or legal rate, whichever is greater, on all monies found to be due to the Plaintiffs from the date said amounts or any part thereof became or becomes due.

23.    That the Court required the Horizon Defendants to notify their commercial associates, suppliers, vendors, customers, manufacturers and other business affiliations of the Court's order.

24.    That the Court grant the Plaintiffs a trial by jury.

25.    That the Court award such other and further relief as the Court may deem appropriate, just and proper.

40

Respectfully submitted this 14th day of September, 2015.


/s/ Joseph P. Schilleci, Jr.
Joseph P. Schilleci, Jr.
(Pro Hac Vice pending)
Schilleci & Tortorici, P.C.
2821 2nd Avenue South, Suite E
Birmingham, Alabama 35233
Telephone: (205) 978-4211
Facsimile: (205) 978-4212
Email: jps@schillecitortoricilaw.com


/s/ Arthur W. Leach
Arthur W. Leach
Georgia Bar No. 442025
5780 Windward Pkwy, Suite 225
Alpharetta, Georgia 30005
Telephone: (404) 786-6443
Email: art@arthurwleach.com

Attorneys for the Plaintiffs

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 7.1(D)</u>

Pursuant to Local Rules 5.1(C) and 7.1(D), I hereby certify that this Complaint was prepared in Microsoft Word using 14 point Times New Roman font.

Respectfully submitted this the 14th day of September, 2015.

> /s/ *Joseph P. Schilleci, Jr.*
> Joseph P. Schilleci, Jr.
> (Pro Hac Vice pending)
> Schilleci & Tortorici, P.C.
> 2821 2nd Avenue South, Suite E
> Birmingham, Alabama 35233
> Telephone: (205) 978-4211
> Facsimile: (205) 978-4212
> Email: jps@schillecitortoricilaw.com


> /s/ *Arthur W. Leach*
> Arthur W. Leach
> Georgia Bar No. 442025
> 5780 Windward Pkwy, Suite 225
> Alpharetta, Georgia 30005
> Telephone: (404) 786-6443
> Email: art@arthurwleach.com

> Attorneys for the Plaintiffs

## **DEFENDANTS TO BE SERVED AT THE FOLLOWING ADDRESSES:**

Horizon Wholesale, LLC
14476 S Center Point Way
Suite 600
Bluffdale, Utah 84065
Through its Registered Agent
Don Jessop
2259 Statehood Drive
Bluffdale, Utah 84065

Zenergy Brands, LLC
Through its Registered Agent
AAA Corporate Services, Inc.
1620 Central Ave Ste 202
Cheyenne, WY 82001 USA

Daniel M Bowles
5708 E Miramonte Dr.
Cave Creek, Arizona 85331

Don Jessop
2259 W Statehood Dr.
Bluffdale, Utah 84065